1  PANKIT DOSHI (231369)
   pdoshi@mwe.com
2  **MCDERMOTT WILL & EMERY LLP**
   415 Mission St, Suite 5600
3  San Francisco, CA  94105-2616
   Telephone:     +1 628 218 3800
4  Facsimile:     +1 628 877 010

5  RACHEL COWEN (*pro hac vice forthcoming*)
   rcowen@mwe.com
6  BRIAN MEAD (*pro hac vice forthcoming*)
   bmead@mwe.com
7  BARRICK BOLLMAN (*pro hac vice forthcoming*)
   bbollman@mwe.com
8  **MCDERMOTT WILL & EMERY LLP**
   444 W Lake Street. Suite 4400
9  Chicago,  IL  60606-0029
   Telephone: +1 312 984 6944
10 Facsimile: +1 312 277 4613

11 Attorneys for Defendant
   MARSH USA, INC.

12              **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14                      **SAN FRANCISCO**

15 MANPREET GILL,                          CASE NO. 3:24-cv-02366-RS

16                  Plaintiff, Counterclaim-    **MARSH USA, INC.'S ANSWER AND**
                    Defendant                   **AFFIRMATIVE DEFENSES TO**
17                                              **COMPLAINT FOR:**
                                                1. Declaratory Judgment
18      vs                                      2. Violation of Labor Code Section 925
                                                3. Violations of Business & Professions Code
19 MARSH USA, INC.,                             Section 17200
                                                4. Violations of Business and Professions Code
20                  Defendant, Counterclaim-    Section 16600.5
                    Plaintiff.
21                                              **MARSH USA, INC.'S COUNTERCLAIM**
                                                **FOR**:
22                                              1. Breach of Fiduciary Duty of Loyalty
                                                2. Breach of Duty of Loyalty
23                                              3. Tortious Interference with Business Relations
                                                4. Tortious Interference with Prospective
24                                              Business Advantage
                                                5. Violation of Business and Professions Code
25                                              Section 17200

26                                              <u>**JURY TRIAL DEMANDED**</u>

27                                              JUDGE:   Richard Seeborg

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## MARSH USA, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant Marsh USA, Inc. ("Marsh")[1], by and through its undersigned counsel, answers as follows:

## INTRODUCTION

1.    Plaintiff Manpreet Gill provides consulting and risk brokerage services for clients in industries such as communications, media, and technology.  He is one of the leaders in his field.  For the last 20 years, and until today, he worked faithfully for Defendant Marsh USA, Inc. ("Marsh") in Northern California.  Earlier today, he resigned his position at Marsh in order to begin a new chapter in his career at a competitor firm, offering similar services to a similar pool of clients as he did at Marsh.  Mr. Gill has commenced this action to ensure he is free to start this new chapter without interference from Marsh, which threatens to unlawfully restrain him.

**ANSWER:**    Marsh admits that Gill worked for Marsh, providing consulting and risk brokerage services in industries such as communications, media, and technology.  Marsh admits that Gill resigned his position on March 20, 2024 to join a competitor firm.  Marsh admits that Lockton, Gill's new employer, provides risk and insurance brokerage services and has overlapping clients but is without knowledge sufficient to form a belief as to the entirety of Gill's current services at Lockton, and therefore denies those allegations.   Marsh is without knowledge sufficient to form a belief as to why Gill resigned from Marsh or as to why Gill commenced this action.  To the extent remaining, Marsh denies the remaining allegations in Paragraph 1.

2.    California maintains a robust public policy in favor of employee mobility.  Business and Professions Code Section 16600 reflects this policy.  It provides: "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Cal. Bus. & Prof. Code § 16600(a).  Business and Professions Code Section 16600 renders both explicit and *de facto* non-competition and non-solicitation provisions void.  A new companion statute required employers to notify employees no

---

[1] Marsh USA LLC is incorrectly referenced by its prior legal entity name Marsh USA Inc. in the Complaint.

later than February 14, 2024 that any such provisions in their agreements with employees are void. *See* Cal. Bus. & Prof. Code § 16600.1.

**ANSWER:** To the extent Paragraph 2 purports to state or describe Cal. Bus. & Prof. Code § 16600 and § 16600.1, those statutes speak for themselves. Other than the language of the statutes, Marsh denies the remaining allegations in Paragraph 2.

3. Marsh violated this statutory requirement. On February 14, 2024, the last possible day, Marsh sent Mr. Gill a notice that suggested some of its non-competes were still operative, affirmatively declared that some provisions "remain in full force and effect," and failed to address other provisions entirely. *All* of Marsh's non-competition provisions—including the ones it tried to exempt in its non-compliant notice—are void, unenforceable, and unlawful.

**ANSWER:** Marsh admits that, on February 14, 2024, Marsh sent Gill a notice regarding his agreements. Marsh denies the remaining allegations in Paragraph 3.

4. Marsh's defective notice shows that Marsh intends to enforce these unlawful provisions against Mr. Gill. Forum selection clauses in Mr. Gill's agreements additionally suggest Marsh will seek to enforce these restraints in foreign jurisdictions, which may not apply California law. But employers may not require California employees "to adjudicate outside of California a claim arising in California" or to use the substantive law of another state. Cal. Lab. Code § 925(a). And, though Marsh acknowledges Mr. Gill is an "at-will" employee, its agreements demand that Mr. Gill give advance notice before leaving. Such notice provisions are also unenforceable.

**ANSWER:** Marsh denies the allegations in Paragraph 4.

5. Mr. Gill has the right to pursue the profession of his choice for the company of his choice and to the protection of California law when doing so. Mr. Gill seeks clarity from the Court that Marsh cannot, and may not, use its invalid contract provisions to stop or hinder Mr. Gill's transition to his new job.

**ANSWER:** Marsh is without information sufficient to form a belief as to why Gill filed this

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

lawsuit, and therefore denies those allegations. Marsh denies the remaining allegations in Paragraph 5.

**PARTIES**

6.     Plaintiff Manpreet Gill is an individual who works and maintains residence in Pleasanton, California. Mr. Gill is a lifelong California resident who has worked in the San Francisco Bay Area for the last 20 years.

**ANSWER:** Marsh admits that Gill is a resident of California and worked for Marsh in the San Francisco Bay Area. Marsh is without information sufficient to form a belief as to where Gill works now, where Gill maintains a residence, or how long Gill has lived in California, and therefore denies those allegations. To the extent allegations remain in Paragraph 6, Marsh denies those allegations.

7.     Defendant Marsh USA, Inc. ("Marsh") is a corporation duly organized and validly existing under the laws of Delaware, with its principal place of business in New York, New York. Marsh is an insurance broker and risk advisor and a subsidiary of Marsh & McLennan Companies, Inc. Marsh has around 45,800 employees ranging across multiple countries, and generates approximately eleven billion dollars in revenue annually.[2]

**ANSWER:** Marsh admits that it is a corporation duly organized and validly existing under the laws of Delaware, with its principal place of business in New York, New York. Marsh admits it is an insurance broker and risk advisor and a subsidiary of Marsh & McLennan Companies, Inc. Marsh admits that Marsh & McLennan Companies, Inc stated in its Form 10-K that Marsh & McLennan Companies, Inc. has around 45,800 employees ranging across multiple countries, and generates approximately eleven billion dollars in revenue annually. Marsh denies the remaining allegations in Paragraph 7.

---

[2] Marsh & McLennan Companies, Inc., Annual Report (Form 10-K) (Feb. 13, 2023), https://www.sec.gov/ix?doc=/Archives/edgar/data/62709/000006270924000016/mmc-20231231.htm.

8. From approximately July 5, 2004 until March 20, 2024, Mr. Gill continuously worked for Marsh in its San Francisco and San Jose offices.

**ANSWER:** Marsh admits that Gill was employed from July 7, 2004 through March 20, 2024 and worked in the San Francisco and San Jose offices. Marsh denies that Gill worked *continuously* in the San Francisco and San Jose offices. To the extent allegations remain in Paragraph 8, Marsh denies those allegations.

## JURISDICTION AND VENUE

9. This action arises under the laws of the State of California and is within the subject matter jurisdiction of the Court pursuant to Article VI, Section 10 of the California Constitution.

**ANSWER :** Marsh admits that this action arises under the laws of California. Marsh admits that it was subject to the subject matter jurisdiction of the Superior Court of California for the County of San Francisco prior to removal. To the extent allegations remain in Paragraph 9, Marsh denies those allegations.

10. Defendant is subject to the jurisdiction of this Court because it conducts business continuously and systematically within California, including by maintaining offices in San Francisco, Los Angeles, Irvine, San Jose, and San Diego. Defendant hired Mr. Gill to work in its San Francisco/San Jose offices, where Mr. Gill worked for nearly 20 years before resigning on March 20, 2024. Defendant's contacts with California, where it maintains offices and employed Mr. Gill, are directly related to Mr. Gill's causes of action.

**ANSWER :** Marsh admits it was subject to the subject matter jurisdiction of the Superior Court of California for the County of San Francisco prior to removal because it conducts business continuously and systematically within California, including by maintaining offices in San Francisco, Los Angeles, Irvine, San Jose, and San Diego. Marsh admits that it hired Gill to work in its San Fransico/San Jose offices and that Gill worked there for nearly 20 years before resigning on March 20, 2024. To the extent allegations remain in Paragraph 10, Marsh denies those allegations.

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

11.     Pursuant to Code of Civil Procedure Sections 395 and 395.5, venue is proper in the Superior Court in the County of San Francisco because San Francisco County is where Mr. Gill's contracts were performed, and because Marsh does not reside within the State of California.

**ANSWER :**     Marsh admits that venue was proper in the Superior Court in the County of San Francisco prior to removal because San Francisco County is where Mr. Gill's contracts were performed, and because Marsh does not reside within the State of California.

## FACTUAL ALLEGATIONS

### A.     Mr. Gill Leaves His Position At Marsh

12.     Mr. Gill worked for Marsh for nearly two decades.  During that time, Mr. Gill worked exclusively out of Marsh's San Jose and San Francisco offices, helping to grow the firm's West Coast presence, and generating substantial business.  He progressed over his career within Marsh from an analyst to a Managing Director.

**ANSWER :**     Marsh admits the allegations in Paragraph 12.

13.     Mr. Gill's connection to California predates his time at Marsh.  Indeed, he has lived in California his entire life.  He was recruited by Marsh while attending business school at the University of California, Berkeley.

**ANSWER :**     Marsh admits that it recruited Gill from the business school at the University of California, Berkeley.   Marsh is without information sufficient to form a belief as to Gill's connections with California before joining Marsh, and therefore denies those allegations.  To the extent allegations remain in Paragraph 13, Marsh denies those allegations.

14.     Mr. Gill excels in managing business risk for corporate clients in the communications, media, and technology industries, among others.  He analyzes market and geopolitical trends and crafts insurance programs to protect his clients against shifts in the financial landscape.  Mr. Gill's talent makes him a valued and trustworthy manager, and his clients rely on him to navigate challenging market dynamics.

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

**ANSWER:** Marsh admits that Gill advises on managing business risk for clients in communications, media, and technology industries, among others, and that Gill is a manager. Marsh denies the remaining allegations in Paragraph 14.

15. On March 20, 2024, Mr. Gill resigned his position with Marsh, effective immediately, in order to accept employment with one of Marsh's competitors. Mr. Gill will be offering the same types of services as he did at Marsh, for a similar pool of clients.

**ANSWER:** Marsh admits that Gill resigned his position on March 20, 2024 in order to accept employment with one of Marsh's competitors. Marsh admits that Lockton, Gill's new employer, provides risk and insurance brokerage services and has overlapping clients but is without knowledge sufficient to form a belief as to the entirety of Gill's current services at Lockton, and therefore denies those allegations. To the extent allegations remain in Paragraph 15, Marsh denies those allegations.

**B.** **Marsh's Unlawful Employment Provisions Threaten Mr. Gill's Employee Mobility**

16. As a condition of employment, Marsh required Mr. Gill to sign several agreements detailing his employment, position, benefits, and compensation. Mr. Gill signed these agreements without being represented by counsel. Upon information and belief, some or all of these agreements purport to be governed by New York law and include illegal restraints on Mr. Gill's ability to work in the insurance and risk management fields, as well as unlawful forum selection clauses. Contracts containing such provisions may include, but not be limited to, Mr. Gill's employment agreement with Marsh, Marsh's "Restrictive Covenants Agreement," and Marsh's "Producer Agreement."

**ANSWER:** Marsh admits that, during the course of Gill's employment over nearly twenty years, it required Gill to sign several agreements detailing his employment, position, benefits, and compensation. Marsh is without information sufficient to form a belief as to whether Gill signed those agreements without being represented by counsel, and therefore denies those allegations. Marsh denies the remaining allegations in Paragraph 16.

17.    Upon information and belief, Marsh routinely includes these unlawful provisions in its agreements with employees.  In so doing, Marsh attempts to exert improper control over its workforce of thousands of employees, including California workers like Mr. Gill.  Further, to the extent these agreements contain forum selection clauses requiring litigation out of state, those clauses improperly deny California workers the local forum that California law demands.  Each of these provisions violates California statutes and/or the State's strong public policy in favor of competition and worker mobility.  Marsh's "Restrictive Covenants Agreement" ("RCA") and "Producer Agreement" provide examples of the illegal provisions Marsh includes.  An illustrative copy of Marsh's RCA is attached hereto as Exhibit A.  An illustrative copy of Marsh's Producer Agreement is attached hereto as Exhibit B.  Upon information and belief, Mr. Gill's agreements with Marsh contain substantively similar provisions.

**ANSWER :**    Marsh denies the allegations in Paragraph 17.

**1.    The "Confidential Information" Restriction**

18.    Many of Marsh's unlawful restraints purport to be predicated on the use of what Marsh calls its "Confidential Information."   Marsh's RCA provides the definition of "Confidential Information":

> "Confidential Information" includes but is not limited to:  (i) financial and business information relating to the Company, such as information with respect to costs, commissions, fees, profits, sales, markets, mailing lists, strategies and plans for future business, new business, product or other development, potential acquisitions or divestitures and new marketing ideas; (ii) product and technical information relating to the Company, such as product formulations, new and innovative product ideas, methods, procedures, devices, machines, equipment, data processing programs, software, software codes, computer models and research and development projects; (iii) client information, such as the identity of the Company's clients, the names of representatives of the Company's clients responsible for entering into contracts with the Company, the amounts paid by such clients to the Company, specific client needs and requirements, specific client risk characteristics, policy expiration dates, policy terms and conditions, information regarding the markets or sources with which insurance is placed and leads and referrals to prospective clients; (iv) personnel information, such as the identity and number of the Company's other employees and officers, their salaries, bonuses, benefits, skills, qualifications and abilities; (v) any and all information in whatever form relating to any client or prospective client of the Company, including but not limited to its business, employees, operations, systems,

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

assets, liabilities, finances, products, and marketing, selling and operating practices; (vi) *any information not included in (i) or (ii) above which the Employee knows or should know is subject to a restriction on disclosure or which the Employee knows or should know is considered by the Company's clients or prospective clients to be confidential, sensitive, proprietary or a trade secret or is not readily available to the public*; or (vii) intellectual property, including inventions and copyrightable works. Confidential Information is not generally known or available to the general public, but had been developed, compiled or acquired by the Company at its effort and expense.

(Exhibit A, § 4(a) (emphasis added).)

**ANSWER :** Marsh admits that Paragraph 18 accurately quotes a portion of the document attached as Exhibit A to the Complaint. Marsh denies the remaining allegations of Paragraph 18.

19. This definition is overbroad, sweeping far beyond trade secrets to encompass industry knowledge and creating unfair hazards for employees and ex-employees alike. Further, as seen in the highlighted excerpt, the definition purports to sweep in information that the employee "should know" to be considered confidential by Marsh or its clients. This unreasonably vague language offers no clarity to employees as to what Marsh will claim they "should know." (*Id.*) Similarly, the definition includes "any and all information in whatever form relating to any client or prospective client of the Company," with no certainty as to who constitutes a "prospective client." (*Id.*)

**ANSWER :** Marsh admits that Paragraph 19 accurately quotes a portion of the document attached as Exhibit A to the Complaint. Marsh denies the remaining allegations of Paragraph 19.

20. Marsh prohibits employees from using Confidential Information "at any time after such employment terminates, [] for his or her own or another's purposes. (Exhibit A, § 4(a) (the "Confidentiality Restriction").) This overbroad, vague restraint means any work Mr. Gill performs for a competitor in the insurance industry could be construed as a breach of this Restriction. The Confidentiality Restriction also offers no clarity on what it means for an employee to "use" Confidential Information "for his or her own or another's purposes." (*Id.*)

**ANSWER :** Marsh admits that Paragraph 20 accurately quotes a portion of the document attached as Exhibit A to the Complaint. Marsh denies the remaining allegations of Paragraph 20.

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

### 2. The Client Non-Solicitation Provision

21. Marsh's RCA includes a Client Non-Solicitation Provision based on this improper definition of "Confidential Information":

> [I]n the event of separation from employment with the Employer, whether such separation is voluntary or involuntary, the Employee will not, for a period of twelve (12) months following such separation, directly or indirectly use Confidential Information, trade secrets or related information regarding the Employer, the Employer's clients and its prospective clients to solicit clients or prospective clients of the Employer for the purpose of selling or providing products or services of the type sold or provided by the Employee while employed by the Employer.

(Exhibit A, § 2(b) (the "Client Non-Solicitation Provision").)

**ANSWER :** Marsh admits that Paragraph 21 accurately quotes a portion of the document attached as Exhibit A to the Complaint. Marsh denies the remaining allegations of Paragraph 21.

22. Aside from incorporating the extreme breadth of Marsh's definition of "Confidential Information," the Client Non-Solicitation Provision purports to restrict the use of "trade secrets *or related information* regarding the Employer, the Employer's clients and its prospective clients." (Exhibit A, § 2(b) (emphasis added).) Such vague language also creates an unfair hazard for departing employees and improperly restricts their ability to practice their chosen profession. For example, former employees like Mr. Gill cannot meaningfully work in the insurance brokerage industry if they are prohibited from using "any and all" "related information" about Marsh's "prospective clients."

**ANSWER :** Marsh admits that Paragraph 22 accurately quotes a portion of the document attached as Exhibit A to the Complaint. Marsh denies the remaining allegations of Paragraph 22.

23. Accordingly, while Marsh can be expected to defend the Client Non-Solicitation Provision as a permissible trade secret protection, the Provision goes well beyond that on its face and, by virtue of its extreme breadth and vagueness, functionally operates as a non-compete that prevents employees such as Mr. Gill from selling or providing products or services of the type they sold or provided at Marsh to "clients" and "prospective clients" anywhere in the world. (*Id.*)

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  **ANSWER :**   Marsh admits that Paragraph 23 accurately quotes a portion of the document

2  attached as Exhibit A to the Complaint.  Marsh denies the remaining allegations of Paragraph 23.

3

4  **3.**      **The Employee Non-Solicitation Provision**

5  24.   Marsh also prohibits employees from recruiting their colleagues to work elsewhere,

6  based on an attenuated concern for Confidential Information:

7  > [B]oth during employment with the Employer and for a period of twelve (12) months
> thereafter, the Employee shall not, either on the Employee's own account or on behalf
8  > of any person, company, corporation, or other entity, directly or indirectly, solicit any
> employee of the Employer with whom the Employee, during the last two (2) years of
9  > his or her employment with the Employer, came into contact for the purpose of
> soliciting or servicing business, to leave employment with the Employer.
10

11  (Exhibit A, § 3 (the "Employee Non-Solicitation Provision").)

12  **ANSWER :**   Marsh admits that Paragraph 24 accurately quotes a portion of the document

13  attached as Exhibit A to the Complaint.  Marsh denies the remaining allegations of Paragraph 24.

14

15  25.   Marsh justifies its Employee Non-Solicitation Provision on the basis that the

16  "Employee has and will come into contact with and acquire Confidential Information and, trade

17  secrets regarding other employees of the Employer." (*Id.*)  But the sweeping prohibition on employee

18  solicitation is detached from any real concern for trade secrets.  Indeed, as Marsh counts the mere

19  "identity . . . of the Company's other employees and officers" as Confidential Information,

20  (Exhibit A, § 4(a)), departing employees may wonder if they are allowed to take home a good-bye

21  card signed by their coworkers.

22  **ANSWER :**   Marsh admits that Paragraph 25 accurately quotes a portion of the document

23  attached as Exhibit A to the Complaint.  Marsh denies the remaining allegations of Paragraph 25.

24

25  **4.**      **The Client Migration Provision**

26  26.   Marsh's "Producer Agreement" includes similar non-solicitation provisions as set out

27  in the RCA.  It also includes an incredibly burdensome Client Migration Provision that imposes an

28  exorbitant "fee" if any client of Marsh leaves to work with a former employee, *regardless of whether*

- 10 -

*any confidential Marsh information was used or even whether the employee solicited that client or not*:

> Any client that was an Active Prospective Client, a customer or client of the Company during the Producer's term of employment and/or affiliation with the Company that terminates its relationship with the Company within thirty-six (36) calendar months, from the end date of the Producer's employment or affiliation with the Company, to conduct business with the Producer directly or indirectly, ***will be conclusively presumed to be purchased by the Producer*** and thereafter, the Producer's client/customer. In such case ***the Producer will pay to the Company, a purchase fee for the client/***customer ***calculated as a sum equal to three (3) times the total income and fees paid or received from the respective client, by the Company on all such business for the twelve (12) month period preceding the end date of the Producer's employment*** or affiliation with the Company. Producer agrees to make all payments due the Company under this Paragraph within thirty (30) days from the first date the Producer conducts business with the Company's customer or client.

(Exhibit B, § 7.2 (emphasis added) (the "Client Migration Provision").)

**ANSWER :** Marsh admits that Paragraph 26 accurately quotes a portion of the document attached as Exhibit B to the Complaint. Marsh denies the remaining allegations of Paragraph 26.

27. The Client Migration Provision purports to impose a severe restraint on any former employee wishing to compete for Marsh's clients (as well as any former employee who merely winds up with one of Marsh's old clients accidentally). Not only Mr. Gill, but also, apparently, his new company, is effectively boxed out of offering services to Marsh clients, former clients, or even prospective clients from decades ago, for three years.

**ANSWER :** Marsh denies the allegations of Paragraph 27.

**5.** **The Notice Provision**

28. Marsh's Producer Agreement expressly acknowledges that the "Producer [i.e., Mr. Gill] is an employee at-will." (Exhibit B, § 2.3.) Nevertheless, it later purports to restrict the employee's ability to terminate his or her employment by requiring at least 30 days' advance notice:

> **By the Producer**. The Producer shall have the right to terminate this Agreement and his employment hereunder by giving the Company not less than 30 days' notice. In the event that such notice is given, the Company may require Producer to leave prior to the date specified in such notice.

(Exhibit B, § 8.1.4 (the "Notice Provision").)[3]

**ANSWER :**  Marsh admits that Paragraph 28 accurately quotes a portion of the document attached as Exhibit B to the Complaint.  Marsh denies the remaining allegations of Paragraph 28.

29.    California law makes clear that an "at-will" employee like Mr. Gill who has "no specified term" may leave immediately "on notice to" their employer.  Cal. Lab. Code § 2922.  And even if the agreement did impose a notice requirement on Mr. Gill, the Notice Provision is independently void and unenforceable as an unlawful restraint on trade under Business and Professions Code Section 16600.

**ANSWER :**  To the extent Paragraph 29 purports to state or describe Cal. Bus. & Prof. Code § 16600 and California Labor Code § 2922, those statutes speak for themselves.  Other than the language of the statutes, Marsh denies the remaining allegations in Paragraph 29.

### 6.    The Forum Selection And Choice Of Law Clause

30.    In addition to its unlawful restrictive covenants, Marsh attempts to require employment disputes to be brought in a New York forum under New York law:

> This Agreement shall be governed by, and construed in accordance with, the law of the State of New York, without regard to its conflict of law provisions.  The parties . . . agree that any action or proceeding with respect to this Agreement and the Employee's employment shall be brought exclusively in the Civil Court of the City of New York, New York County, or in the Supreme Court of the State of New York, New York County, or in the United States District Court for the Southern District of New York and the parties agree to the jurisdiction thereof.

(Exhibit A, § 12 (the "Forum Selection Clause").)

**ANSWER :**  Marsh admits that Paragraph 30 accurately quotes a portion of the document attached as Exhibit A to the Complaint.  Marsh denies the remaining allegations of Paragraph 30.

---

[3] Marsh has no reciprocal obligation.  "The Company shall have the right to terminate this Agreement and Producer's employment hereunder for any reason, or no reason, at any time[.]"  (Exhibit B, § 8.1.1.)

31.     But California law guarantees Mr. Gill a California forum and "the substantive protection of California law" when litigating employment disputes.  Cal. Lab. Code § 925.  And California courts also refuse to honor forum selection clauses when doing so would violate a California resident's rights in violation of state public policy.  To the extent this clause was not already void as against public policy, it is now voidable at Mr. Gill's request, which he makes here.

**ANSWER :**    To the extent Paragraph 31 purports to state or describe California Labor Code § 925, those statute speaks for itself.  Other than the language of the statute, Marsh denies the remaining allegations in Paragraph 31.

## C.     Marsh Provides A Defective Section 16600.1 Notice

32.     Business and Professions Code Section 16600.1 requires employers to notify their employees that all existing noncompete clauses in their employment agreements are void.  Cal. Bus. & Prof. Code § 16600.1.  Employers had until February 14, 2024 to inform their employees. *Id.*

**ANSWER :**    To the extent Paragraph 32 purports to state or describe California Business and Professions Code § 16600.1, that statute speak for itself.  Other than the language of the statute, Marsh denies the remaining allegations in Paragraph 32.

33.     On February 14, 2024, Marsh sent Mr. Gill a notice purportedly pursuant to this statute (the "Notice").  A true and correct copy of this notice is attached to the complaint as Exhibit C.  The Notice informed Gill that Marsh was modifying his employment agreements:[4]

> You are hereby notified pursuant to [Business and Professions Code] Section 16600.1 that provisions in any agreement that prohibit solicitation and/or servicing of the Company's clients or prospective clients, or solicitation of employees, which are not conditioned on the misuse or disclosure of trade secrets, are void and superseded by this notice, as are any choice of law provisions that apply anything other than the law of the State of California.

---

[4] The RCA includes a unilateral modification provision wherein Marsh "may make changes to the Agreement that are favorable to the Employee (*e.g.*, to conform the provisions of this Agreement to changes in court decisions or legislation), without securing the written consent of Employee to the change." (Exhibit A, § 14.)  Upon information and belief, each of Mr. Gill's employment agreements contains a substantively identical provision.

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

However, the remaining provisions in your Agreements, including your confidentiality obligations, remain in full force and effect. You also continue to owe common law duties of loyalty and confidentiality to the Company. As such, we will continue to protect against any misuse or disclosure of the Company's trade secrets, including but not limited to use or disclosure of trade secrets for the purpose of soliciting or servicing Company clients or prospective clients, or soliciting employees.

(Exhibit C.)

**ANSWER :** Marsh admits that Paragraph 33 accurately quotes a portion of the document attached as Exhibit C to the Complaint. Marsh admits that, on February 14, 2024, it sent Gill a notice as required by California Business and Professions Code § 16600.1. Marsh denies the remaining allegations of Paragraph 33.

34.     The Notice does not comply with, nor satisfy, the requirements of Business and Professions Code Section 16600.1. Marsh's Client Non-Solicitation Provision, Employee Non-Solicitation Provision, Confidentiality Restriction, Client Migration Provision, and Notice Provision are all invalid noncompete clauses under Business and Professions Code Section 16600. But the Notice does not adequately address any of these Provisions. Marsh's Client Non-Solicitation and Employee Non-Solicitation Provisions are both conditioned on the use of "Confidential Information," which Marsh defines to include (though goes well beyond) trade secrets: Marsh offers no clarity as to whether it believes these provisions are void (they are). Marsh claims Mr. Gill's "confidentiality obligations[] remain in full force and effect," even though they, too, are unlawful. And Marsh conspicuously omits any reference to its Client Migration Provision, which is a clearly void noncompete under Business and Professions Code Section 16600, as well as its Notice Provision.

**ANSWER :** Marsh admits that Paragraph 34 accurately quotes a portion of the document attached as Exhibit C to the Complaint. Marsh denies the remaining allegations of Paragraph 34.

35.     Marsh's Notice voided any choice-of-law clauses requiring New York law to govern employment disputes but did not affirmatively provide for California law to apply, which it clearly does given that Mr. Gill has been a resident of—and employed by Marsh exclusively in—California

for 20 years. It also did not alter the New York forum selection clauses, which as discussed above are void and/or voidable under California law.

**ANSWER :** To the extent Paragraph 35 purports to describe the notice attached as Exhibit C, that document speaks for itself. Marsh denies the remaining allegations in Paragraph 35.

## D. <u>Marsh's Non-Competes, Forum Selection Clauses, And Notice Requirements Are Void And Unenforceable</u>

36. Mr. Gill's agreements with Marsh contain the unlawful provisions described above, or substantively identical ones. These provisions are direct threats to Mr. Gill's freedom to pursue the profession of his choice. Forgoing a year or more of work in the insurance brokerage field would create long-term professional and reputational damage to the distinguished career that Mr. Gill has spent decades building. Marsh's restrictive covenants are unlawful restraints on Mr. Gill's right to compete, specifically, and undermine California's public policy more generally.

**ANSWER :** Marsh denies the allegations of Paragraph 36.

37. Business and Professions Code Section 16600 demonstrates California's commitment to free competition and employee mobility. Apart from narrow statutory exceptions, not at issue here, the statute provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600(a). The statute emphasizes that "[t]his section shall be read broadly . . . to void the application of any noncompete agreement in an employment context, or any noncompete clause in an employment contract, no matter how narrowly tailored, that does not satisfy an exception in this chapter." Cal. Bus. & Prof. Code § 16600(b)(1). Decades of judicial precedent reinforce the broad scope of Business and Professions Code Section 16600, which covers explicit non-compete provisions as well as *de facto* non-compete provisions such as non-solicitation provisions, overly broad confidentiality provisions, and other restrictive covenants.

**ANSWER :** To the extent Paragraph 37 purports to state or describe California Business and Professions Code § 16600, that statute speaks for itself. Other than the language of the statute,

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

1   Marsh denies the remaining allegations in Paragraph 37.

2

3       38.     Marsh's above-described Client Non-Solicitation Provision, Employee Non-

4   Solicitation Provision, Confidentiality Provision, and Client Migration Provision each violate

5   Business and Professions Code Section 16600.  Marsh couches its anticompetitive restraints in the

6   language of protecting confidential information and fee payment plans, but that does not allow these

7   provisions to evade clear public policy.  Business and Professions Code Section 16600 applies to

8   "any noncompete agreement in an employment context, or any noncompete clause in an employment

9   contract, no matter how narrowly tailored, that does not satisfy ***an exception in this chapter***."  Cal.

10  Bus. & Prof. Code § 16600(b)(1) (emphasis added).  No statutory exceptions apply to Mr. Gill.  Each

11  of these provisions is void and unenforceable.

12      **ANSWER :**    To the extent Paragraph 38 purports to state or describe California Business

13  and Professions Code § 16600, that statute speaks for itself.  Other than the language of the statutes,

14  Marsh denies the remaining allegations in Paragraph 38.

15

16      39.     California also protects workers against unfair forum selection clauses.  Labor Code

17  Section 925 prohibits employers from "requir[ing] an employee who primarily resides and works in

18  California, as a condition of employment, to . . . adjudicate outside of California a claim arising in

19  California" and from depriving employees of "the substantive protection of California law with

20  respect to a controversy arising in California."[5]  Cal. Lab. Code § 925(a).   Contract provisions

21  requiring out-of-state forums for local employment disputes are "voidable by the employee, and if a

22  provision is rendered void at the request of the employee, the matter shall be adjudicated in California

23  and California law shall govern the dispute."  *Id.* § 925(b).  Even before Labor Code Section 925,

24  California courts would decline to enforce forum selection clauses when doing so would jeopardize

25  California residents' public policy rights.  Marsh's forum selection clause, to the extent it was not

26  _____

27  [5] Section 925 applies to contracts "entered into, modified, or extended on or after January 1, 2017."
    Cal. Lab. Code § 925(f).  Here, Mr. Gill's contacts with Marsh were modified post-2017 according
28  to Marsh's Notice.

CASE NO. 3:24-CV-02366-RS: DEFENDANT MARSH USA, INC.'S ANSWER TO PLAINTIFF MANPREET
GILL'S COMPLAINT

already void as against public policy, violates Labor Code 925 and is voidable through this action.

**ANSWER :**   To the extent Paragraph 39 purports to state or describe California Labor Code § 925, that statute speaks for itself. Other than the language of the statute, Marsh denies the remaining allegations in Paragraph 39.

40.   Finally, Marsh attempts to categorize Mr. Gill as an "at-will" employee and simultaneously impose notice requirements on him prior to leaving Marsh. But "at-will" employees may leave "on notice" to their employers. Cal. Lab. Code § 2922. Further, a non-reciprocal provision like this is an invalid restraint on Mr. Gill's economic mobility. Marsh's Notice Provision is also void and unenforceable.

**ANSWER :**   To the extent Paragraph 40 purports to state or describe California Labor Code § 2922, that statute speaks for itself. Other than the language of the statute, Marsh denies the remaining allegations in Paragraph 40.

### E.   Marsh's Defective Notice Confirms The Ripe Controversy

41.   The Notice that Marsh provided did not comply with California law. It suggested that Section 16600 did not apply to the *de facto* non-competes masquerading as confidentiality, non-solicit, and "anti-migration" provisions. (Ex. C.) But courts and the statute's plain language make clear that all these provisions are void under Business and Professions Code Section 16600. Marsh's Notice violated Business and Professions Code Section 16600.1.

**ANSWER :**   Marsh denies the allegations of Paragraph 41.

42.   Intent on preserving its ability to enforce unlawful restraints on Mr. Gill's mobility, Marsh refused to declare void the unlawful and unenforceable *de facto* non-competes and forum selection clauses in Mr. Gill's agreements with Marsh, notwithstanding California's new legislative mandate that it do so. This Court should intervene to grant Mr. Gill relief establishing that the unlawful provisions in Mr. Gill's agreements with Marsh are void and that Mr. Gill is free to work for the company of his choice without interference.

**ANSWER :** Marsh denies the allegations of Paragraph 42.

43. This relief will clarify California's new statutory regime and its longstanding public policy. A judicial declaration of these principles will benefit California workers and provide guidance to California employers on a broad scale. Private enforcement like Mr. Gill's complaint is necessary to establish the scope of employees' rights. Therefore, in the interests of justice, Mr. Gill's attorneys' fees should not be paid out of his own recovery.

**ANSWER :** Marsh denies the allegations of Paragraph 43.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment)

44. Mr. Gill realleges the foregoing paragraphs as if fully set forth herein.

**ANSWER :** Marsh reincorporates the responses to the foregoing paragraphs as if fully set forth herein.

45. An actual, present, and justiciable controversy exists between Mr. Gill and Marsh concerning the enforceability of any and all restraints on trade and notice requirements in Mr. Gill's signed employment agreements. Indeed, Marsh recently doubled down on its illegal employment contracts by violating Business and Professions Code Section 16600.1 with its defective Notice.

**ANSWER :** Marsh denies the allegations of Paragraph 45.

46. Section 1060 of the Code of Civil Procedure provides Mr. Gill the right to challenge the validity and enforceability of any non-competes and forum selection clauses in Mr. Gill's agreements with Marsh.

**ANSWER :** To the extent Paragraph 46 purports to state or describe California Code of Procedure § 1060, that statute speaks for itself. Other than the language of the statute, Marsh denies the remaining allegations in Paragraph 46.

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

47.     Pursuant to Code of Civil Procedure Section 1060, Mr. Gill requests a declaratory judgment from this court that: (a) the above-described Client Non-Solicitation, Employee Non-Solicitation, and Client Migration Provisions, as well as all Confidentiality Restrictions and any other non-compete provisions in Mr. Gill's agreements with Marsh, are void, unlawful, and unenforceable under Business and Professions Code Sections 16600, 16600.1, and 16600.5; (b) all forum selection clauses in Mr. Gill's agreements with Marsh are void and unenforceable under California's strong public policy in favor of worker mobility as codified in Business and Professions Code Sections 16600, 16600.1, and 16600.5; (c) Mr. Gill was not required to give advance notice before terminating his employment because such an obligation is void under Labor Code 2922, and/or because such a requirement is an invalid restraint of trade under Business and Professions Code Section 16600; (d) Mr. Gill may work for a competitor and use his general skills and knowledge acquired at Marsh; and (e) California law applies to any dispute over Mr. Gill's previous employment with Marsh.

**ANSWER :**   To the extent Paragraph 47 purports to characterize Gill's lawsuit, no response is necessary.  Marsh denies that Gill is entitled to the relief he seeks.

## **SECOND CAUSE OF ACTION**

### **(Violation of Labor Code Section 925)**

48.     Mr. Gill realleges the foregoing paragraphs as if fully set forth herein.

**ANSWER :**   Marsh reincorporates the responses to the foregoing paragraphs as if fully set forth herein.

49.     Labor Code Section 925 provides:  "[a]n employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would . . . [r]equire the employee to adjudicate outside of California a claim arising in California." Cal. Lab. Code § 925(a).  An employer similarly may not include a provision in such an agreement that would "[d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California."  *Id.*

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**ANSWER :**   To the extent Paragraph 49 purports to state or describe California Labor Code § 925, that statute speaks for itself.  Other than the language of the statute, Marsh denies the remaining allegations in Paragraph 49.

50.   This prohibition applies to "contract[s] entered into, modified, or extended on or after January 1, 2017."  *Id.* § 925(f).  The prohibition applies if the employee was not represented by counsel when negotiating the terms of the agreement.  *Id.* § 925(e).

**ANSWER :**   To the extent Paragraph 50 purports to state or describe California Labor Code § 925, that statute speaks for itself.  Other than the language of the statute, Marsh denies the remaining allegations in Paragraph 50.

51.   Marsh maintains forum selection clauses in its agreements with Mr. Gill that would require Mr. Gill to adjudicate his employment disputes in New York.  While Marsh voided all choice-of-law provisions that substantive law other than California's, it did not affirmatively impose California law.  Other jurisdictions adjudicating Mr. Gill's employment disputes with Marsh may not apply California substantive law.

**ANSWER :**   Marsh denies the allegations in Paragraph 51.

52.   On February 14, 2024, Marsh modified these contracts with Mr. Gill by voiding all non-California choice of law provisions.  Mr. Gill was not represented by counsel to negotiate the terms of his agreements when he entered into them with Marsh, nor when Marsh unilaterally modified the agreements on February 14, 2024.

**ANSWER :**   Marsh admits that on March 14, 2024, Marsh voided non-California choice of law provisions in its contracts with Gill as required by Section 16600.1 of the Business and Professions Code.  Marsh is without information sufficient to form a belief as to whether Gill was represented by counsel, and therefore denies those allegations.  To the extent allegations remain, Marsh denies those allegations.

53.   Pursuant to Labor Code Section 925, Mr. Gill is entitled to an injunction or other

- 20 -

equitable relief voiding all forum selection clauses in his agreements with Marsh and prohibiting Marsh from enforcing the same, as well as an award of reasonable attorneys' fees and costs spent in enforcing his rights.

**ANSWER :**   Marsh denies the allegations in Paragraph 53.

### THIRD CAUSE OF ACTION

**(Violation of Business & Professions Code Sections 17200 *et seq.*)**

54.     Mr. Gill realleges the foregoing paragraphs as if fully set forth herein.

**ANSWER :**   Marsh reincorporates the responses to the foregoing paragraphs as if fully set forth herein.

55.     Business and Professions Code Sections 17200 *et seq.* (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The UCL renders violations of other statutes (such as Business and Professions Code Section 16600, Labor Code Section 925, etc.) unfair and unlawful business practices.

**ANSWER :**   To the extent Paragraph 55 purports to state or describe California Business and Professions Code § 17200, that statute speaks for itself.  Other than the language of the statute, Marsh denies the remaining allegations in Paragraph 55.

56.     Business and Professions Code Section 16600 provides:  "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Cal. Bus. & Prof. Code § 16600(a).  And "[a]n employer's use of an illegal noncompete agreement also violates the UCL."  *Dowell v. Biosense Webster, Inc.* (2009) 179 Cal. App. 4th 564, 575.

**ANSWER :**   To the extent Paragraph 56 purports to state or describe California Business and Professions Code § 16600, that statute speaks for itself.  Other than the language of the statute, Marsh denies the remaining allegations in Paragraph 56.

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

57.    Marsh continues to maintain unlawful non-compete provisions in its employment agreements with Mr. Gill, including its Client Non-Solicitation, Employee Non-Solicitation, Client Migration, and Notice Provisions and Confidentiality Restrictions.

**ANSWER :**    Marsh denies the allegations in Paragraph 57.

58.    Business and Professions Code Section 16600.1 provides:  "[i]t shall be unlawful to include a noncompete clause in an employment contract, or to require an employee to enter a noncompete agreement, that does not satisfy an exception in this chapter."  Cal. Bus. & Prof. Code § 16600.1(a).  It requires that employers notify current and former employees by February 14, 2024, that those unlawful provisions are void.  *Id.* § 16600.1(b)(1).  A violation of this statute constitutes a violation under the UCL.  *Id.* § 16600.1(c).

**ANSWER :**    To the extent Paragraph 58 purports to state or describe California Business and Professions Code § 16600.1, that statute speaks for itself.  Other than the language of the statute, Marsh denies the remaining allegations in Paragraph 58.

59.    Marsh's Notice did not properly notify Mr. Gill that all unlawful restrictions on his post-employment conduct were void.  It hinted that some unlawful provisions were still operative, expressly declared that other unlawful provisions remained in effect, and did not address other unlawful provisions.  Marsh failed to comply with the requirements of Business and Professions Code Section 16600.1.

**ANSWER :**    Marsh denies the allegations in Paragraph 59.

60.    Labor Code Section 925 prohibits employers from requiring employees to enter agreements that "[r]equire the employee to adjudicate outside of California a claim arising in California."  Cal. Lab. Code § 925(a)(1).  This prohibition applies to "contract[s] entered into, modified, or extended on or after January 1, 2017."  *Id.* § 925(f).  The prohibition applies if the employee was not represented by counsel when negotiating the terms of the agreement.  *Id.* § 925(e).

**ANSWER :** To the extent Paragraph 60 purports to state or describe California Labor Code § 925, that statute speaks for itself. Other than the language of the statute, Marsh denies the remaining allegations in Paragraph 60.

61. Marsh maintains forum selection clauses in its agreements with Mr. Gill that would require Mr. Gill to adjudicate his employment disputes in New York. On February 14, 2024, Marsh modified these contracts with Mr. Gill by voiding all non-California choice of law provisions. Mr. Gill was not represented by counsel to negotiate the terms of his agreements when he entered into them with Marsh, nor when Marsh unilaterally modified the agreements on February 14, 2024.

**ANSWER :** To the extent Paragraph 61 purports to state or describe California Labor Code § 925, that statute speaks for itself. Other than the language of the statute, Marsh denies the remaining allegations in Paragraph 61.

62. Labor Code Section 2922 provides that for at-will employees, "[a]n employment, having no specified term, may be terminated at the will of either party on notice to the other." Cal. Lab. Code § 2922.

**ANSWER :** To the extent Paragraph 62 purports to state or describe California Labor Code § 2922, that statute speaks for itself. Other than the language of the statute, Marsh denies the remaining allegations in Paragraph 62.

63. Marsh's agreements with Mr. Gill label him an "at-will" employee but also require him to provide notice before terminating his employment.

**ANSWER :** Marsh admits that Gill was an at-will employee. Marsh denies the remaining allegations in Paragraph 63.

64. Mr. Gill has been injured by the unlawful provisions in Marsh's agreements with him, as well as by Marsh's defective Notice and its confusing contract modifications. These provisions and the Notice have delayed Mr. Gill from leaving Marsh for a competitor and forced him to spend

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

money consulting with attorneys regarding his rights and obligations under his agreements with Marsh.

**ANSWER :** Marsh denies the allegations in Paragraph 64.

65.    Mr. Gill is therefore entitled to injunctive and equitable relief that:  (a) voids the above-described Client Non-Solicitation, Employee Non-Solicitation, and Client Migration Provisions, along with all Confidentiality Restrictions and any other non-compete provisions in his agreements with Marsh pursuant to Business and Professions Code Sections 16600 and 17200; (b) voids all forum selection clauses in Mr. Gill's agreements with Marsh pursuant to Labor Code Section 925 and California public policy; (c) voids all Notice Provisions in Mr. Gill's agreements with Marsh; and (d) prohibits Marsh from attempting to enforce these provisions, either directly or indirectly, pursuant to Business and Professions Code Section 17204 and Labor Code Section 925(c).  Mr. Gill reserves the right to recover damages and other relief warranted by Marsh's use and enforcement of void non-compete, non-solicitation, and forum selection clauses.

**ANSWER :** Marsh denies the allegations of Paragraph 65.


## FOURTH CAUSE OF ACTION

### (Violations of Business and Professions Code Section 16600.5)

66.    Mr. Gill realleges the foregoing paragraphs as if fully set forth herein.

**ANSWER :** Marsh reincorporates the responses to the foregoing paragraphs as if fully set forth herein.

67.    Business and Professions Code Section 16600.5 provides:  "[a]n employer that enters into a contract that is void under this chapter or attempts to enforce a contract that is void under this chapter commits a civil violation."  Cal. Bus. & Prof. Code § 16600.5(d).

**ANSWER :** To the extent Paragraph 67 purports to state or describe California Business and Professions Code § 16600.5, that statute speaks for itself.  Other than the language of the statute, Marsh denies the remaining allegations in Paragraph 67.

- 24 -

68.     A former employee "may bring a private action to enforce this chapter for injunctive relief or the recovery of actual damages, or both." *Id.* § 16600.5(e)(1).

**ANSWER :**    To the extent Paragraph 68 purports to state or describe California Business and Professions Code § 16600.5, that statute speaks for itself.  Other than the language of the statute, Marsh denies the remaining allegations in Paragraph 68.

69.     Mr. Gill is a former employee of Marsh.

**ANSWER :**    Marsh admits the allegations of Paragraph 69.

70.     Marsh has entered into several agreements with Mr. Gill that include provisions void under Business and Professions Code Section 16600, a section of the same chapter as Business and Professions Code Section 16600.5.  These provisions include the Client Non-Solicitation, Employee Non-Solicitation, Notice, and Client Migration Provisions, as well as the Confidentiality Restriction.

**ANSWER :**    Marsh denies the allegations of Paragraph 70.

71.     Marsh intends to enforce these void contracts against Mr. Gill to inhibit his transition from Marsh.

**ANSWER :**    Marsh denies the allegations of Paragraph 71.

72.     Marsh's defective Notice violated Business and Professions Code Section 16600.1, another section of the same chapter.

**ANSWER :**    Marsh denies the allegations of Paragraph 72.

73.     Mr. Gill is therefore entitled to injunctive and equitable relief that:  (a) voids the above-described  Client  Non-Solicitation,  Employee  Non-Solicitation,  Notice,  and  Client  Migration Provisions, along with all Confidentiality Restrictions and any other non-compete provisions in his agreements with Marsh; and (b) prohibits Marsh from attempting to enforce these provisions, either directly or indirectly, as well as an award of reasonable attorneys' fees and costs spent in enforcing

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

his rights.  Mr. Gill reserves the right to recover damages and other relief warranted by Marsh's use and enforcement of void non-compete provisions.

**ANSWER :**    Marsh denies the allegations of Paragraph 73.

## MARSH USA, INC.'S AFFIRMATIVE DEFENSES TO PLAINTIFF'S CLAIMS

### *First Affirmative Defense*

Gill's claims are barred in whole or in part under the doctrine of unclean hands, where Gill breached his duties of loyalty to Marsh and tortiously interfered with Marsh's business relations.

### *Second Affirmative Defense*

Gill lacks privity to the contracts at issue in his claims, where Gill bases those claims on unsigned agreements that do not apply to him rather than his own applicable agreements.

### *Third Affirmative Defense*

Gill's claims for damages are barred to the extent he failed to mitigate his damages by inquiring about his current agreements and their effect and avoiding expending unnecessary attorneys' fees on his claims, which are based on unsigned agreements that do not apply to him.

### *Fourth Affirmative Defense*

Gill's claims for attorneys' fees are barred to the extent he seeks unreasonable attorneys' fees incurred by not inquiring about his current agreements and their effect and avoiding expending unnecessary attorneys' fees on his claims, which are based on unsigned agreements that do not apply to him.

McDermott Will & Emery LLP
Attorneys At Law
Chicago

## <u>MARSH USA, INC.'S COUNTERCLAIMS AGAINST PLAINTIFF MANPREET GILL</u>

Defendant, Counterclaim-Plaintiff Marsh USA, Inc. ("<u>Marsh</u>") files counterclaims against Plaintiff, Counterclaim-Defendant Manpreet Gill ("Gill") for breach of fiduciary duty of loyalty, breach of duty of loyalty, tortious interference with business relations, tortious interference with prospective business advantage, and unfair competition under Section 17200 of the Business and Professions Code.  In support of these counterclaims, Marsh alleges as follows:

### <u>INTRODUCTION</u>

1.      Gill, a longtime employee of Marsh, took a job with Marsh's competitor Lockton Companies ("Lockton").  Notwithstanding Gill's premature lawsuit based on the wrong agreements, Marsh does not contest that Gill can lawfully compete with Marsh while at Lockton so long as he does not use Marsh's confidential information and trade secrets.  But, what is prohibited by law is competing with one's employer <u>while still employed</u>.  And yet, that is exactly what Gill did, embarking on a multi-pronged campaign to take Marsh's clients and employees with him to Lockton, all while still employed by and paid by Marsh.  ***First***, in the months prior to his resignation, Gill began to silo communications to himself and involve himself in accounts to levels he previously had not so he could take credit for colleagues' work and embed himself as a "point person" in the clients' eyes.  At the same time, Gill took steps to delay Marsh's renewal of services to those same clients or delay Marsh's contracting with client.  This was all done to put himself and Lockton in the best possible position to gain business from these clients when he moved.  ***Second***, Gill stopped pursuing new business on behalf of Marsh, saving opportunities for himself and Lockton and damaging Marsh.  In fact, Gill completely failed to share a request for proposal for a new line of business that was solicited by one client that moved to Lockton right after his departure.  ***Third***, in the weeks prior to his resignation, Gill met with and spoke with clients to inform them of his pending move to Lockton and begin soliciting their business.  Damningly, Gill even did this during in-person client meetings— ostensibly on behalf of Marsh—that took place just hours before he resigned.  ***Fourth***, not content with laying the groundwork to steal Marsh's clients and new business opportunities before his resignation, Gill also sought to have key members of Marsh's team join him at Lockton.  This includes Trevor Smith, who resigned the same day as Gill using nearly the exact same language in

McDermott Will & Emery LLP<br/>Attorneys At Law<br/>Chicago

his resignation notice. Taken together, Gill's campaign constitutes (1) breach of his fiduciary duty to Marsh; (2) breach of his duty of loyalty to Marsh; (3) tortious interference with Marsh's business relations; (4) tortious interference with Marsh's prospective business advantage; and (5) unfair competition under Section 17200 of the Business and Professions Code. As a result of Gill's misconduct, Marsh has lost millions of dollars in revenue.

## BACKGROUND

2.     Marsh is a professional services firm that provides insurance risk management, insurance broking, insurance program management, risk consulting, analytical modeling, and alternative risk financing services to a wide range of businesses, government entities, professional service organizations and individuals.

3.     Gill is a former Managing Director of Marsh, serving as the Communications, Media, and Technology Practice Leader for the Western United States Region. After resigning from Marsh, he joined its competitor Lockton as an Executive Vice President, Global Technology Risk Practice Leader.

4.     Marsh does not contest that, under California law, Gill is able to work for Lockton.

5.     Indeed, Gill's operative restrictive covenant agreement (the "RCA") does not include a non-competition covenant. (*See* Exhibit A, 2023 Restrictive Covenant Agreement.)

6.     The RCA, moreover, only imposes a non-solicitation obligation that prohibits Gill from "directly or through others us[ing] Confidential Information, trade secrets or related information regarding [Marsh], [Marsh]'s clients and its prospective clients to solicit clients or prospective clients of [Marsh] for the purpose of selling products or services of the type sold or provided by [Gill] while employed by [Marsh]" and from "us[ing] or disclos[ing] Confidential Information or Trade Secrets in order to solicit or induce other employees of [Marsh] to leave employment with [Marsh]." (Ex. A, § 2.)

7.     The RCA also includes a non-disclosure obligation that Gill will not, during or after his employment, use for his own purpose or another's purpose or disclose Marsh's non-public confidential information. (Ex. A, § 3.) And, as required by Business and Professions Code 16600.1, Marsh sent written notice to Gill on February 14, 2024 informing him that "provisions in any

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

agreement that prohibit solicitation and/or servicing of the Company's clients or prospective clients, or solicitation of employees, which are not conditioned on the misuse or disclosure of trade secrets, are void and superseded by this notice, as are any choice of law provisions that apply anything other than the law of the State of California." (*See* Exhibit B, 2024 Notice.)

8. While Gill can compete freely against Marsh so long as he does not use Marsh's confidential and trade secret information, Gill could not compete against Marsh <u>while Gill was employed by Marsh</u>. That is exactly what he did.

9. In the months before resigning, Gill began to silo communications with himself or otherwise attempt to cut out members of the Marsh team and take credit for their work. Gill also began delaying Marsh's servicing efforts for clients. This was all in an effort to put himself in advantageous position to obtain these clients on behalf of his new employer.

10. Gill also either stopped his new business development efforts or stopped reporting those efforts to Marsh because he wanted to save opportunities for himself and his new employer. In one instance, Gill received a request for proposal ("RFP") from a client for new business that he did not tell anyone at Marsh about.

11. Then, in the run up to his resignation, Gill began soliciting Marsh clients on behalf of himself and Lockton. In fact, on the day he resigned, Gill visited two clients ostensibly on behalf of Marsh but in actuality on behalf of Lockton.

12. Shortly after Gill left, three clients left and moved their business to Lockton because of Gill's solicitations and efforts while on Marsh's payroll.

13. Further, Gill owed Marsh a duty to perform his duties with ordinary care and diligence; yet Gill did not arrange for the execution of a client services agreement ("CSA") even though that CSA was ready to be executed, causing Marsh to lose out on approximately $975,000.00 in fees.

14. Accordingly, Marsh brings claims for breach of fiduciary duty of loyalty, breach of duty of loyalty, tortious interference with business relations, tortious interference with prospective business advantage, and unfair competition under Section 17200 of the Business and Professions Code.

**THE PARTIES**

15. Gill is an individual domiciled in the state of California.

16. Marsh is a citizen of Delaware and New York because it is a corporation duly organized and validly existing under the laws of Delaware, with its principal place of business in New York, New York.

**JURISDICTION & VENUE**

17. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity among the Parties and the amount in controversy exceeds $75,000.00.

18. Venue is proper in this Court under 28 U.S.C. § 1391(a) because Plaintiff, Counterclaim-Defendant Gill resides in this judicial district.

**FACTUAL ALLEGATIONS**

19. Gill was a longtime employee of Marsh, working there from July 7, 2004 through March 20 2024.

20. In his last role with Marsh, Gill was a Managing Director, serving as the Communications, Media, and Technology Practice Leader for the Western United States Region.

21. In this role, Gill managed client relationships in the communications, media, and technology sector, managed teams of Marsh employees who provided the services its clients contracted for, and was charged with seeking new business opportunities in the communications, media, and technology sector.

22. Gill was generally successful at Marsh, responsible for millions of dollars of business.

23. Gill developed a reputation as a demanding employee who pushed his colleagues to meet client demands, was fastidious in approach to client contracts, client work product, and client presentations, and who regularly charged after new business.

24. Upon information and belief, Gill began negotiating a move to Lockton in late 2023.

25. In the first quarter of 2024, Gill's conduct as a Marsh employee changed.

26. For example, although Gill was normally very responsive to his colleagues, he became difficult to get ahold of and many projects reached bottlenecks due to Gill's newfound lack of responsiveness.

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

27.     Likewise, while Gill normally would copy his colleagues on email communications with clients, Gill began to email clients directly without copying his colleagues.

28.     In a similar vein, Gill also began to shift his communications with clients from email to calls that he would conduct himself without any other Marsh colleagues on the line.

29.     In contrast to his new proclivity for excluding colleagues from his communications, Gill began to ask to be copied on every client email his colleagues sent regardless of content.

30.     Gill also started joining client calls and meetings that he normally would not join and often would take credit for the work that other Marsh colleagues did rather than himself.

31.     In a similar vein, Gill also began seeking to entertain clients at a higher rate than normal in an attempt to get face time with clients and present himself as a point person prior to his departure to Lockton. In fact, in the first quarter of 2024, Gill expensed more than double his normal quarterly entertainment expenses for the first quarter of the calendar year.

32.     Additionally, Gill would put off client renewal meetings that were being scheduled in the month before his departure. These meetings were important for Marsh to outline its strategy for upcoming insurance renewals for clients to continue earning business from those clients. By delaying those meetings, Gill put Marsh in a disadvantageous position with those clients.

33.     Collectively, Gill's efforts—including to silo communications to himself, create entertainment touchpoints, involve himself in accounts to levels he previously had not and take credit for colleagues' work, and delay client renewal meetings—were taken in order to put himself and Lockton in the best possible position to gain business from these clients when he moved.

34.     Further, Gill's known new business development efforts tailed off dramatically.

35.     For example, even though Gill would submit lists of prospects to be entered into Marsh's CRM platform MarshForce, Gill stopped sending these prospect lists on February 3, 2024.

36.     So odd was Gill's behavior that the individual charged with entering and tracking prospects emailed Gill on March 11, 2024, noting that she had not heard from him in a while and wanted to make sure she had all of his prospects in advance of an upcoming growth team call. Gill did respond that he was "behind sending these and I will shortly" but never did follow up with any updated prospects.

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

37.     Similarly, while Gill led several RFP responses in the first quarter of 2023, it appears that he led zero RFP responses in the first quarter of 2024.

38.     As an example, Gill received an RFP from "Client A" on March 8, 2024, with a due date of March 15, 2024.  After Gill did not respond initially, the "Client A" contact emailed Gill on March 12, 2024, making sure he received her email.  Gill responded at that time: "I did receive the Broker RFP and confirm Marsh would like to participate. I will be reviewing the RFP in further detail and will let you know if there are any questions."  Despite this, Gill did not forward the RFP to anyone or put together a response.  Outside of Gill, Marsh did not become aware of the RFP until March 27, 2024, when the contact emailed a separate Marsh colleague, and had to scramble to put together a tardy response.

39.     Gill either made less effort to earn new business for Marsh because he knew he would be going to Lockton and thus did not want to expend the time and energy to benefit his employer that he would be leaving soon, or Gill simply did not enter his new business efforts into the MarshForce system because he wanted to save those opportunities for Lockton.

40.     Gill resigned from Marsh in the evening of March 20, 2024.

41.     On the same evening, Trevor Smith—Senior Vice President and Sharing Economy & Mobility Group Casualty Leader—resigned from Marsh using a resignation letter that was almost an exact copy of Gill's.   Smith later joined Lockton.

42.     Upon information and belief, Gill solicited Smith on Lockton's behalf while Gill was employed by Marsh.

43.     In the weeks prior to his resignation, Gill began calling and telling Marsh clients that he would be leaving Marsh to join Lockton.

44.     In fact, when Marsh employees began contacting clients as early as the morning of March 21, 2024, clients nearly universally expressed prior awareness of Gill's departure to Lockton.

45.     For example, Gill met in person with "Client B" on Wednesday, March 20, 2024, *while employed by Marsh and supposedly on Marsh's behalf*.  When Marsh called the client contact the next day to notify of Gill's departure and Marsh's plan for the account, the client informed Marsh that Gill told him about the Lockton move during the March 20, 2024 in person meeting.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

46.     Another client that Gill met with in person on March 20, 2024—"Client J"—also reported that during Gill's meeting with them, "he made sure to tell everyone he was going to Lockton to set up their tech practice." That Gill even met with this client in person was atypical, as the account was mostly handled by another Marsh colleague who was unaware of the meeting until Gill asked her for a summary of Marsh's successful renewal for that client.

47.     Gill also texted the client contact at "Client D" on March 15, 2024, to set up a meeting where there was no Marsh-related purpose to meet with that client. A meeting was scheduled on March 22, 2024, which Gill attended on behalf of Lockton.

48.     To give another example of Gill's pre-departure campaign and roadshow to begin soliciting on behalf of Lockton, "Client E" told Marsh on March 22, 2024, that Gill had already contacted them "earlier that week"—i.e., March 18, March 19, or March 20.

49.     Similarly, "Client F" told Marsh on March 25, 2024, that Gill had reached out "a couple of weeks before" to let them know he was leaving. On this account in particular, Gill began joining client calls in the preceding weeks and months that he normally would not have attended where he did not provide the substantive services for the account.

50.     Likewise, "Client G" reported that Gill had called on a weekend before his Marsh resignation to tell that client about his imminent move to Lockton.

51.     As a final example of Gill's pre-departure campaign and roadshow, Gill sent "Client H" an email just prior to his resignation on March 20, 2024, and told the client "if you have any questions please call me on the mobile number I provided you earlier this week."

52.     Upon information and belief, Gill gave this client and others a number for his Lockton phone or a personal phone so he could continue solicitations without Marsh being able to investigate his pre-departure phone activity.

53.     Aiding Gill's scheme to impair Marsh's ability to investigate his pre-departure phone activity: while Gill has returned his Company-issued iPhone, Marsh is unable to search that phone because Gill professes to have suddenly forgotten the password even though he used the device on the day he resigned.

54.     Since Gill has left Marsh, it has lost three accounts to Lockton—"Client I", "Client

J", and "Client A".

55.    With respect to "Client I", Gill delayed renewal meetings to advantage Lockton.  After an underwriting meeting on February 26, 2024, the client reached out around March 5, 2024, for an update meeting.  When Gill's colleague attempted to schedule the meeting for the next week, Gill intervened telling the colleague that Gill had a call with the client's Chairman and Chief Executive Officer and that there was no need for the update call yet.

56.    On March 26, 2024, "Client I" informed Marsh that it had switched to Lockton.

57.    Upon information and belief, during Gill's call with "Client I's" Chairman and CEO or in subsequent communications, Gill informed "Client I" that he would be joining Lockton and that they should wait to continue the underwriting process until he started at Lockton.

58.    In the preceding year, Marsh earned approximately $150,000.00 in revenue from "Client I" and expected to earn similar revenues in 2024.

59.    With respect to "Client J", the client contact informed Marsh that Gill told them in advance of his move to Lockton while he was employed by Marsh.

60.    Upon information and belief, Gill also directly advertised or solicited "Client J" on behalf of Lockton during his conversations telling "Client J" that he would be resigning from Marsh and joining Lockton.

61.    "Client J" later moved a portion of its business to Lockton that Marsh expected to earn $964,000.00 in revenue on.

62.    With respect to "Client A", that client sent Marsh a notice that it changed its broker of record to Lockton on March 28, 2024.

63.    Curiously, this March 28, 2024 broker of record letter is almost an exact match to the November 20, 2023 letter that March had prepared for "Client A" when it won its business.

64.    The March 28, 2024 broker of letter record also included as an appendix a schedule of policies that matched an excerpt of a policy transition schedule that Marsh created for "Client A".

65.    After winning new business, Marsh begins to provide its brokering services.  In parallel, Marsh and the new client negotiate and execute a CSA.  Marsh can only get paid for its services through the execution of the CSA.   Normally, this process takes one to two months.

__SEG__

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 3:24-CV-02366-RS: DEFENDANT MARSH USA, INC.'S ANSWER TO PLAINTIFF MANPREET GILL'S COMPLAINT

66. Marsh had previously won this business from "Client A" in November 2023. Shortly after Marsh won the business, "Client A" reached out to Gill asking to get started on the CSA. Gill immediately forwarded this to Marsh's contracting team, hoping to "get this quickly" as it was a "brand new client with a $950K total fee on an evergreen basis." As Marsh's internal team worked on the draft, Gill pushed for quicker execution—for example, on December 7, 2023, Gill emailed the team that "we need this asap" because "[T]his is a new client and we are overdue on this agreement by several weeks already."

67. But, on theme, Gill's attitude changed at the end of 2023 and into 2024. For instance, as the contracting teamed worked to address client edits and additional components in January 2024 and February 2024, Gill became unresponsive and a bottleneck to the completion of the CSA.

68. Then, when the CSA was completely finalized and ready for client execution on March 12, 2024, Gill did nothing with it. Gill did not send the CSA to the client for signature. The CSA remained unsigned when Gill left and the client followed him to Lockton.

69. Because Gill did not get the CSA executed, Marsh cannot get paid on the work that it had done for "Client A" from November 13, 2023 through March 28, 2024.

70. Lockton, on the other hand, can get paid as the new broker of record for the commissions that Marsh would have been paid on the policies it brokered from November 13, 2023 through March 28, 2024.

71. When Gill was being paid by Marsh, he was not devoting his efforts to Marsh and its business. Rather, Gill was taking steps—including outright solicitations—to put his new employer, Lockton, in an advantageous position to get business from Marsh's clients so he could start delivering immediately with that new employer.

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty Of Loyalty

72. Marsh realleges the foregoing paragraphs 1 through 71 as if fully set forth herein.

73. Gill, as a Managing Director and the Communications, Media, and Technology Practice Leader for the Western United States Region, participated in the management functions of Marsh and exercised discretionary authority. This included autonomy in assembling teams to support

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

the clients Gill serviced and managing their work.

74.     While employed by Marsh, Gill owed a fiduciary duty of loyalty to Marsh.

75.     Gill breached that fiduciary duty by siloing communications to himself, involving himself in accounts to levels he previously had not, taking credit for colleagues' work, and delaying client renewal meetings all so that he could put himself and Lockton in the best possible position to gain business from these clients when he moved.

76.     Gill breached that fiduciary duty by not finalizing the "Client A" CSA in a timely manner before departure.

77.     Gill breached that fiduciary duty by either not attempting to win new business for Marsh because he knew he would be going to Lockton and thus did not want to expend the time and energy to benefit his employer that he would be leaving soon or by not informing Marsh of new business opportunities because he wanted to save those opportunities for Lockton.

78.     Gill breached that fiduciary duty by soliciting clients on behalf of Lockton while employed by Marsh.

79.     Gill breached this fiduciary duty by soliciting Marsh employees—including but not limited to Trevor Smith—while employed by Marsh.

80.     As a proximate result of Gill's breaches, Marsh has been damaged—this includes but is not limited to (1) the impairment of the opportunity to win the "Client A" RFP, (2) the loss of at least $975,000.00 in revenue for work that Marsh did on behalf of "Client A" and that Marsh cannot collect because Gill failed to have the "Client A" CSA executed, (3) the loss of a $964,000.00 account from "Client J", (4) the loss of a $150,000.00 account from "Client I"; and (5) the loss of the investment in its poached employee, Trevor Smith.

81.     Marsh is entitled to relief and judgment against Gill for the profit that it lost from "Client A", "Client J", and "Client I" as well any other clients that join Lockton as a result of Gill's pre-departure breaches, the profit it would have earned from the new business opportunities that Gill did not pursue on behalf of Marsh, disgorgement of all monies paid to Gill during his period of disloyal service, plus interests, costs, and other such monetary and equitable relief as Marsh can prove at trial and as this Court deems just and equitable.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## SECOND CAUSE OF ACTION

### Breach of Duty Of Loyalty

82. Marsh realleges the foregoing paragraphs 1 through 71 as if fully set forth herein.

83. While employed by Marsh, Gill owed a duty of loyalty to Marsh.

84. Gill breached that duty by siloing communications to himself, involving himself in accounts to levels he previously had not, taking credit for colleagues' work, and delaying client renewal meetings all so that he could put himself and Lockton in the best possible position to gain business from these clients when he moved.

85. Gill breached that duty by not finalizing the "Client A" CSA in a timely manner before departure.

86. Gill breached that duty by either not attempting to win new business for Marsh because he knew he would be going to Lockton and thus did not want to expend the time and energy to benefit his employer that he would be leaving soon or by not informing Marsh of new business opportunities because he wanted to save those opportunities for Lockton.

87. Gill breached that duty by soliciting clients on behalf of Lockton while employed by Marsh.

88. As a proximate result of Gill's breaches, Marsh has been damaged—this includes but is not limited to (1) the impairment of the opportunity to win the "Client A" RFP, (2) the loss of at least $975,000.00 in revenue for work that Marsh did on behalf of "Client A" and that Marsh cannot collect because Gill failed to have the "Client A" CSA executed, (3) the loss of a $964,000.00 account from "Client J", (4) the loss of a $150,000.00 account from "Client I" and (5) the loss of the investment in its poached employee, Trevor Smith.

89. Marsh is entitled to relief and judgment against Gill for the profit that it lost from "Client A", "Client J", and "Client I" as well any other clients that join Lockton as a result of Gill's pre-departure breaches, the profit it would have earned from the new business opportunities that Gill did not pursue on behalf of Marsh, disgorgement of all monies paid to Gill during his period of disloyal service, plus interests, costs, and other such monetary and equitable relief as Marsh can prove at trial and as this Court deems just and equitable.

# THIRD CAUSE OF ACTION

## Tortious Interference With Business Relations

90. Marsh realleges the foregoing paragraphs 1 through 71 as if fully set forth herein.

91. Marsh had economic relationships with its clients, including "Client A", "Client J", and "Client I".

92. Gill, as a Managing Director and the Communications, Media, and Technology Practice Leader for the Western United States Region, had knowledge of Marsh's relationships with its clients, including "Client A", "Client J", and "Client I".

93. Gill, as a Managing Director and the Communications, Media, and Technology Practice Leader for the Western United States Region, had knowledge of Marsh's relationships with its clients, including "Client A", "Client J", and "Client I".

94. Gill took intentional acts meant to disrupt those relationships, including:

 a. siloing communications to himself, involving himself in accounts to levels he previously had not, taking credit for colleagues' work, and delaying client renewal meetings all so that he could p himself and Lockton in the best possible position to gain business from these clients when he moved;

 b. not finalizing the "Client A" CSA in a timely manner before departure; and

 c. soliciting clients on behalf of Lockton while employed by Marsh.

95. As a result of Gill's actions, Marsh's relationships with its clients, including "Client A", "Client J", and "Client I" have been disrupted.

96. Gill's actions have been the proximate cause of economic harm to Marsh—this includes but is not limited to (1) the loss of at least $975,000.00 in revenue for work that Marsh did on behalf of "Client A" and that Marsh cannot collect because Gill failed to have the "Client A" CSA executed, (2) the loss of a $964,000.00 account from "Client J", and (3) the loss of a $150,000.00 account from "Client I".

97. Marsh is entitled to relief and judgment against Gill for the profit that it lost from "Client A", "Client J", and "Client I" as well any other clients that join Lockton as a result of Gill's tortious interference, plus interests, costs, and other such monetary and equitable relief as Marsh can

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

prove at trial and as this Court deems just and equitable.

**FOURTH CAUSE OF ACTION**

**Tortious Interference With Prospective Business Advantage**

98.     Marsh realleges the foregoing paragraphs 1 through 71 as if fully set forth herein.

99.     Marsh and "Client A" had an economic relationship, with a probability of future economic benefit to Marsh.

100.    Gill, as a Managing Director and the Communications, Media, and Technology Practice Leader for the Western United States Region, had knowledge of Marsh's relationship with "Client A" and the probability of a future economic benefit to Marsh.

101.    In fact, Gill was the recipient of an RFP from "Client A".

102.    Gill took intentional acts to disrupt Marsh's relationship with "Client A" that were wrongful, including the failure to pursue the "Client A" RFP in breach of his duties of loyalty to Marsh so that Lockton could instead gain the business.

103.    The relationship with "Client A" was in fact disrupted.  Not only did "Client A" change its broker of record from Marsh to Lockton, but the response on "Client A's" new RFP was tardy as a result of Gill's actions.

104.    Gill's actions have been the proximate cause of economic harm to Marsh including the impairment of the opportunity to win the "Client A" RFP and the revenue and profit associated with that RFP.

105.    Marsh is entitled to relief and judgment against Gill for the profit that it would have earned from "Client A" for that RFP as provable at trial, plus interests, costs, and other such monetary and equitable relief as Marsh can prove at trial and as this Court deems just and equitable.

**FIFTH CAUSE OF ACTION**

**Violation of Business and Professions Code Section 17200 *et seq*.**

106.    Marsh realleges the foregoing paragraphs 1 through 71 as if fully set forth herein.

107.    Section 17200 of the California Business and Professions Code provides a cause of action for unfair competition, which includes "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

108. Section 17200 has been construed to forbid anything that can "properly be called a business practice and that at the same is forbidden by law." *Korea Supply Co. v. Lockheed Martin Corp.*, (2003) 29 Cal.4th 1134, 1443.

109. By breaching his fiduciary duty of loyalty to Marsh, Gill has committed an unlawful and unfair business act as contemplated by Section 17200.

110. By breaching his duty of loyalty to Marsh, Gill has committed an unlawful and unfair business act as contemplated by Section 17200.

111. By tortiously interfering with Marsh's business relations, Gill has committed an unlawful and unfair contemplated by Section 17200.

112. By tortiously interfering with Marsh's prospective business advantage, Gill has committed an unlawful and unfair contemplated by Section 17200.

113. As a proximate result of Gill's unlawful and unfair competition, Marsh has been damaged—this includes but is not limited to (1) the impairment of the opportunity to win the "Client A" RFP, (2) the loss of at least $975,000.00 in revenue for work that Marsh did on behalf of "Client A" and that Marsh cannot collect because Gill failed to have the "Client A" CSA executed, (3) the loss of a $964,000.00 account from "Client J", (4) the loss of a $150,000.00 account from "Client I"; and (5) the loss of the investment in its poached employee, Trevor Smith.

114. Marsh is entitled to relief and judgment against Gill for the profit that it lost from "Client A", "Client J", and "Client I" as well any other clients that join Lockton as a result of Gill's pre-departure breaches, the profit it would have earned from the new business opportunities that Gill did not pursue on behalf of Marsh, disgorgement of all monies paid to Gill while he was unfairly and unlawfully competing with Marsh, plus interests, costs, and other such monetary and equitable relief as Marsh can prove at trial and as this Court deems just and equitable.

### PRAYER FOR RELIEF

WHEREFORE, Marsh respectfully requests this Court grant:

1. An award of damages as provable at trial for (1) the impairment of the opportunity to win the "Client A" RFP, (2) the loss of at least $975,000.00 in revenue for work that Marsh did on behalf of "Client A" and that Marsh cannot collect because Gill failed to have the "Client A"

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CSA executed, (3) the loss of a $964,000.00 account from "Client J", (4) the loss of a $150,000.00 account from "Client I"; and (5) the loss of the investment in its poached employee, Trevor Smith;

2.  An award of attorneys' fees and costs as result of this action pursuant to Section 17200 of the Business and Professions Code;

3.  An award of prejudgment and post judgment interest; and

4.  Such further legal and equitable relief that this Court may deem just and necessary.

Dated: May 10, 2024                    Respecfully submitted,

**MCDERMOTT WILL & EMERY LLP**

By:     _/s/ Pankit Doshi_
        PANKIT DOSHI
        RACHEL COWEN
        BRIAN MEAD
        BARRICK BOLLMAN

        Attorneys for Defendant
        MARSH USA, INC.

McDermott Will & Emery LLP
ATTORNEYS AT LAW
SAN FRANCISCO