UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANPREET GILL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARSH USA, INC.,<br><br>　　　　Defendant. | Case No. 24-cv-02366-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE** |

## I. INTRODUCTION

Plaintiff Manpreet Gill ("Gill") filed this action against his former employer, Defendant Marsh USA, LLC ("Marsh"), averring that Marsh forced Gill to enter into illegal contracts while employed at Marsh. Marsh, in turn, filed five counterclaims against Gill, which Gill now moves to dismiss. Gill separately seeks to strike Marsh's request for attorney's fees and first affirmative defense of unclean hands. For the reasons set forth herein, Gill's motion to dismiss the counterclaims is granted in part and denied in part, with leave to amend. Additionally, the motion to strike is granted in part and denied in part, without leave to amend.

## II. BACKGROUND

Marsh is an insurance and risk management services limited liability company ("LLC") incorporated in Delaware. Prior to his resignation in March of 2024, Gill worked at Marsh for nearly 20 years. His last role at the company was Managing Director of the Communications, Media, and Technology Practice Leader for the Western United States Region. Following his

resignation, Gill accepted a similar role at Lockton, a brokerage firm and Marsh's competitor. Trevor Smith, Gill's colleague at Marsh, resigned on the same day and now similarly works at Lockton.

Gill contends that, prior to his resignation, he informed Marsh's clients about his impending departure, providing them with his personal contact information should they have lingering questions. In Marsh's view, Gill's conduct in the months leading up to his departure amounted to impermissible solicitation of Marsh's clients on Lockton's behalf. As examples, Marsh recounts that Gill emailed clients directly without copying his colleagues and shifted client communications from emails to direct telephone calls; insisted that he be copied on client emails regardless of context; joined client meetings he normally did not; took credit for his colleagues' work; and entertained clients excessively in the months leading up to his departure, all with the purported intention of ingratiating himself with those clients. Marsh also bases its counterclaims on Gill's purported failure both to renew existing client renewal contracts by not responding to at least one client's request for proposals ("RFP") and to seek new business or clients on Marsh's behalf, saving those business opportunities, instead, for Lockton. Gill's pre-departure meetings with clients are also characterized as efforts to inform them of his move to Lockton before notifying Marsh, which Marsh maintains were efforts by Gill to solicit those clients for Lockton while still employed at Marsh. This purportedly resulted in several of Marsh's active and potential accounts moving to Lockton following Gill's resignation, as well as at least one employee.

## III. LEGAL STANDARD

### A.     Motion to Dismiss

A complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

(citing *Twombly*, 550 U.S. at 556). This asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the claims alleged in the complaint. Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *See Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and citation omitted). When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). It must also "draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

### B. Motion to Strike

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *SidneyVinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.1983). 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). However, an affirmative defense may be stricken as insufficient if it does not give the opponent "fair notice" of the defense or if it is immaterial, i.e., has "no possible bearing on the subject of the litigation." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979; *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). Unless it would prejudice the opposing party, courts freely grant leave to amend stricken pleadings. *Wyshak*, 607 F.2d at 826; *see also* Fed. R. Civ. P. 15(a)(2).

# IV. DISCUSSION

### A. Motion to Dismiss

#### 1. Breach of Fiduciary Duty

Marsh first avers that Gill breached his fiduciary duties by ingratiating himself with Marsh's clients in the hopes of gaining their business for Lockton while still employed at Marsh. The viability of this counterclaim first turns on the choice of law under which the claim arises, and the parties dispute whether Delaware or California law is applicable. Marsh contends that California law governs this claim because it does not arise out of a failure or breach related to the actual governance of the company. Gill, by contrast, argues that California's "internal affairs doctrine" dictates that a breach of fiduciary duty claim such as this one is "subject to the laws of the state of incorporation." *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir. 1985), *overruled on other grounds* by *Mattel, Inc. v. MGA Ent., Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013).

"In a diversity case, federal courts apply the substantive law of the forum in which the court is located, including the forum's choice of law rules." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001) (internal quotations omitted). California has adopted the internal affairs doctrine, a choice of law principle that requires the laws of a business entity's state of incorporation to govern matters concerning its internal affairs, i.e., those "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982); *State Farm Mut. Auto. Ins. Co. v. Superior Ct.*, 114 Cal. App. 4th 434, 442 (2003); Cal. Corp. Code § 17708.01(a)(1) ("The law of the state . . . under which a foreign limited liability company is formed governs all of the following: The organization of the limited liability company, its internal affairs, and the authority of its members and managers.").

In *Davis & Cox*, the Ninth Circuit held that "claims involving 'internal affairs' of corporations, such as the breach of fiduciary duties, are subject to the laws of the state of incorporation." 751 F.2d at 1527. An exception to the internal affairs doctrine applies "where, with

respect to the particular issue, some other state has a more significant relationship to the parties and the transaction…there is no reason why corporate acts involving the making of contracts, the commission of torts and the transfer of property should not be governed by the local law of different states." *Lidow v. Superior Ct.*, 206 Cal. App. 4th 351, 360 (2012). The applicability of the exception turns on whether the claim implicates some "vital statewide interests." *Id*. at 362.

Marsh argues that the internal affairs doctrine is inapplicable because the particular breach it avers is unrelated to a matter of "actual governance" of the company, and instead concerns Gill's purported diversion of corporate opportunities. *See Medimpact Healthcare Sys., Inc. v. IQVIA*, 646 F. Supp. 3d 1266, 1278-79 (S.D. Cal. 2022). In *Medimpact*, the court held that the breach of fiduciary duty claim, which concerned the misappropriation of trade secrets, fell outside of the internal affairs of the company because the averments underlying the claim in that case did not implicate corporate governance, "such as the election/appointment of directors or officers, issues related to by-laws, issuance of corporate shares, holding of meetings, voting, right to examine records, or reclassification of shares." *Id*. at 1278.

California Corporations Code § 17708.01(a) does not limit the internal affairs of a company to matters related to its actual governance. *Medimpact*, too, should not be read to limit the internal affairs doctrine simply to such matters. Rather, the weight of authority counsels that breach of fiduciary duty claims are typically considered within the ambit of a company's internal affairs. *See, e.g.*, *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1214-15 (N.D. Cal. 2007). As articulated in *Lidow*, the exception to the internal affairs doctrine applies when the party advancing the claim implicates a broader state interest or external affairs such as tort or contract disputes. In *Medimpact*, the vital state interest tied to the breach of fiduciary duty claim was the misappropriation of trade secrets, circumstances absent here. Marsh has not plead how the averments attached to this counterclaim, including Gill's client communications and his general practices vis-à-vis his colleagues, implicate any vital California interest such that the exception to the internal affairs doctrine is applicable. Nor has Marsh explained why California has a more significant relationship to the parties than Delaware, other than that Gill's alleged misconduct

occurred in California. The site of the alleged misconduct cannot alone form the basis for deciding which state's law applies – following that logic would collapse the internal affairs doctrine entirely.

Applying Delaware law to this claim, the question then arises whether Gill owed Marsh any fiduciary obligations. LLCs are "creatures of contract" in that they may modify, expand, or otherwise alter the default fiduciary duties owed by the company or its members. *See In re Atlas Energy Res., LLC,* No. CIV.A. 4589-VCN, 2010 WL 4273122, at *6 (Del. Ch. Oct. 28, 2010). Absent a contractual provision making such an alteration, an LLC's managers and controlling members in a manager-managed LLC owe the "traditional fiduciary duties that directors and controlling shareholders in a corporation would." *Kelly v. Blum*, 2010 WL 629850 (Del. Ch. Feb. 24, 2010). Delaware courts have typically imposed "no fiduciary duties on non-managing, non-controlling members of [LLCs]." While Marsh avers that Gill "participated in the management functions of Marsh and exercised discretionary authority," Countercl. ¶ 73, Marsh has failed to aver whether Gill was a manager or controlling member at Marsh or if a contractual provision imposing fiduciary duties on Gill exists. Absent specific averments resolving these questions, Marsh's breach of fiduciary duty claim fails under Delaware law.

2. Breach of Duty of Loyalty

A breach of duty of loyalty claim requires "(1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." *Huong Que, Inc. v Luu*, 150 Cal. App. 4th 400, 410 (2007). Under California law, "an employee, while employed, owes undivided loyalty to his employer." *Id*. at 414. Gill does not propose that he owed no duty of loyalty to Marsh, but instead seeks to dismiss this claim on the basis that his former employer pleads neither any breaches of that duty nor that its harm was proximately caused by Gill's purported breach.

"While California law does permit an employee to seek other employment and even to make some 'preparations to compete' before resigning, California law does not authorize an employee to transfer his loyalty to a competitor. During the term of employment, an employer is

entitled to its employees' undivided loyalty." *Fowler v. Varian Associates, Inc.*, 196 Cal. App. 3d 34, 41 (1987). Gill contends that his communications with clients prior to his departure were intended merely to notify them of his change in employment, rather than to solicit their business for Lockton, and were therefore lawful. The clients repeatedly confirmed that Gill met with them to inform them of his impending move. Gill also challenges Marsh's allegations that he reached out increasingly to clients to schedule communications and meetings prior to leaving. Gill is correct that these averments alone do not establish that he was attempting to solicit those clients improperly. However, Gill wrongly isolates those averments.

In fact, Marsh pleads sufficient circumstantial evidence, which, viewed in totality, leads to the plausible inference that Gill sought to solicit wrongfully those clients for Lockton. Marsh largely contends that, in addition to his communications with clients, Gill began taking steps to ingratiate himself with Marsh's clients near the end of his employment – steps he had not taken in the past, including joining client meetings he typically would not, taking credit for his colleagues' work, and wining and dining clients increasingly. He also moved client communications from email or test messages to calls he conducted independently.[1] All this Gill did while purportedly failing to renew existing client contracts, with the alleged intention that clients would leave Marsh and join Gill at Lockton – conduct that plausibly constitutes a transfer of loyalty to Lockton prior to his departure. Gill's improper narrowing of Marsh's averments as simply complaining of Gill's work quality fails to persuade.

Marsh has also adequately plead that its injury was proximately caused by Gill's actions. Specifically, Marsh averred that Gill atypically slowed the client renewal process down so that

---

[1] Gill contends that Marsh is in possession of his work phone so should be able to determine whether his communications with clients entail more than mere notifications of his impending departure. Gill's work phone was returned to the company upon Gill's departure. However, Gill claimed to forget the password after he resigned, so Marsh is unable to retrieve his communications with clients. While Gill's inability to recall the passcode occurred purportedly after he had already departed Marsh, so cannot serve as a basis to show he breached his duty of loyalty, Marsh similarly cannot be faulted for failing to investigate Gill's phone when its contents are inaccessible.

clients would not be under contract with Marsh when he moved to Lockton. After Gill left Marsh, those clients moved to Lockton as well. While Gill may argue that those clients' departure was caused not by any breach on Gill's part but simply their desire to continue working with an individual they valued (or, rather, their independent desire to engage with Lockton), at this juncture, that need not be accepted as true. Accordingly, Marsh's breach of duty of loyalty counterclaim has been plausibly plead.

       3.   Tortious Interference with Active and Prospective Business Relations

The third counterclaim advanced by Marsh suggests that Gill tortiously interfered with its active business relations, providing the examples of three of Marsh's clients, Client A, Client J, and Client I, all of whom had existing business relationships with Marsh before switching to Lockton. Similarly, the fourth counterclaim pleads tortious interference with Marsh's prospective business client, focusing only on Gill's purported failure to pursue the RFP with Client A.

Under California law, to state a claim for either tortious interference with business relations or for prospective business advantage, a party must show:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc*., 913 F.2d 676, 689 (9th Cir. 1990); *see also Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1153 (2003). In addition, a party advancing tortious interference with a prospective economic advantage must also plead that the interference was "wrongful by some measure beyond the fact of the interference itself." *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007) (citing to *Della Penna v. Toyota Motor Sales, U.S.A., Inc*., 11 Cal. 4th 376, 392-93 (1995)). Gill does not address all factors but contends that Marsh's tortious interference claims fail because it has failed to plead plausibly that he intentionally interfered with Marsh's business relations, and because Gill's conduct, to the extent it was wrongful, was not independent of the interference.

Gill first attacks three "buckets" of acts raised in Marsh's counterclaims that the latter

ORDER ON MOTION TO DISMISS COUNTERCLAIMS
CASE NO. 24-cv-02366-RS
8

contends evince tortious interference. The first relates to Gill's purported practice of "siloing communication to himself, involving himself in accounts he previously had not, taking credit for colleagues' work, and delaying client renewal meetings." Countercl. ¶ 94. Gill argues that this does not resemble conduct intended to disrupt Marsh's business relationships and that these actions cannot be said to have caused Client A, J, and I's departures from Marsh. Second, Gill challenges Marsh's claim that Gill acted wrongfully by failing to finalize a client services agreement ("CSA") with Client A in a timely manner before departure, arguing that Gill's purported inaction to deliver a message to a client cannot constitute tortious interference. Finally, Gill maintains that Marsh has not averred plausibly that Gill solicited Marsh's clients on Lockton's behalf. As such, Gill argues, Marsh has not plead any independent acts of interference.

Gill's attempt to characterize his affirmative actions and omissions as mere inaction fails to persuade. As explained above, Marsh has plead at least plausibly that Gill's actions, in totality may constitute solicitation of Marsh's clients for Lockton in breach of Gill's duty of loyalty to Marsh. Similarly, here, the wrongful conduct may constitute tortious interference with Marsh's business relations with A, J, and I, who all eventually transferred their business to Lockton. Further, while Gill's failure to pursue Client A's RFP in a timely fashion could be construed as mere inaction that does not rise to the level of tortious interference, Marsh has sufficiently plead otherwise at this juncture. Indeed, Marsh contends that Gill interfered tortiously with its prospective business relations with Client A by the independent act of delaying its response to Client A's RFP, causing Marsh considerable loss. Accordingly, these claims survive Gill's motion.

4. UCL

"California's UCL prohibits unfair competition by means of any unlawful, unfair or fraudulent business practice. Each prong of the UCL is a separate and distinct theory of liability." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) (quoting Cal. Bus. & Prof. Code § 17200). Marsh avers that Gill's conduct, as plead in averments attendant to its foregoing counterclaims, was unlawful or unfair in violation of the UCL.

Gill challenges Marsh's UCL claim on the basis that it has failed to aver any unlawful or unfair behavior in violation of the UCL. The Ninth Circuit has explained that in order for a party to plead a violation of California's UCL under its "unlawful" prong, "a common law violation such as breach of contract is insufficient." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1044 (9th Cir. 2010). Instead, a business practice "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made" must be the predicate for a UCL claim brought under the unlawful prong. *Id*. (quoting *Saunders v. Superior Ct.*, 27 Cal. App. 4th 832, 838–39 (1994)). A common law violation may be a basis for a UCL claim if the alleged conduct is also unlawful, unfair, or fraudulent. *Id*. (internal citation omitted). Marsh does not dispute that its counterclaims concern common law violations only but argues nonetheless that its breach of duties of loyalty and tortious interference claims still constitute UCL violations.[2]

While Marsh has provided no authority to support the notion that a breach of duty of loyalty claim may be based upon a UCL violation under the unlawful prong, the opposite is true for its tortious interference claims. In *CRST Van Expedited, Inc*., the Ninth Circuit held that a tortious interference with contractual relations claim may be actionable under the UCL. *See* 479 F.3d at 1107. However, that case pre-dated *Shroyer*, and the weight of authority since suggests that a UCL violation brought under the "unlawful" prong may not be predicated on common law violations alone. *See Foundry IV Inc. v. Hard Carry Gaming Inc.*, No. CV 23-2690-KK-MARx, 2024 WL 211010 at *6-7 (C. D. Cal. Jan. 3, 2024) (collecting cases). Marsh's attempt to cabin *Shroyer* to only some common law violations (without even specifying which) fails to persuade.

Marsh's UCL claim fails for the independent reason that it has failed to plead the appropriate remedy. "Injunctive relief and restitution are the only remedies available under the UCL." *Esparza v. Safeway, Inc.*, 36 Cal. App. 5th 42, 53 (2019) (citation omitted). Marsh seeks neither remedy in its Counterclaims but construes its requests for damages as "restitution of the monies it had a vested interest in" and "injunctive relief requiring Gill to unlock his Marsh

---

[2] Marsh does not argue in its opposition to Gill's motion that it avers a UCL violation derived from these claims under the "unfair" prong. In focusing its opposition on caselaw relevant to the "unlawful" prong only, it abandons the "unfair" prong of its UCL claim.

iPhone." Opp. at 15. In fact, Marsh plead with specificity only that it is entitled to lost profits it expected to earn from Clients A, J, and I, and makes no mention of the purported injunctive relief (i.e., enjoining Gill to provide the password to his Marsh iPhone) it now asserts. Profits Marsh expected to earn from business relations cannot constitute restitution because Marsh has no "ownership interest in it and thus there is nothing to restore." *Lee v. Luxottica Retail N. Am., Inc.*, 65 Cal. App. 5th 793, 807 (2021) (internal quotes omitted). Marsh's claim that it properly plead remedies available under the UCL is unconvincing.

### B. Motion to Strike

Gill separately moves to strike (1) Marsh's request for attorneys' fees under the UCL; and (2) Marsh's affirmative defense of unclean hands. Gill admits that his own complaint seeks attorneys' fees under the UCL, however he plans to amend his complaint to correct this error. Indeed, "attorney fees and damages, including punitive damages, are not available under the UCL." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003). Marsh contends that it will withdraw its request for attorneys' fees if Gill does the same. The parties are welcome to stipulate to do so if they so desire, but what is relevant here is whether Marsh is entitled to attorneys' fees under the UCL. As it is not, Marsh's request for attorneys' fees under the UCL is stricken.

Gill additionally moves to strike Marsh's affirmative defense of unclean hands. In California, "[t]he misconduct that brings the clean hands doctrine into play must relate directly to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice." *Kendall-Jackson Winery, Ltd. V. Superior Ct.*, 76 Cal. App. 4th 970, 979 (1999). Gill argues that his claims concern his post-employment restraints on trade, whereas Marsh's allegations pertain only to his conduct while employed at Marsh, so the defense must be struck as improperly unsuited to Gill's claims. Marsh does not directly challenge Gill's motion, arguing instead that it is premature to determine whether the defense is applicable or not. While it is unclear how Marsh's defense relates squarely with Gill's claims, which are largely predicated on Marsh's anticompetitive conduct following Gill's departure, construing Gill's motion in the light most favorable to Marsh as is required, it is possible that Marsh's

unclean hands defense may relate to Gill's averments. As such, the motion to strike this defense is denied.

### V. CONCLUSION

For the reasons explained herein, the motion to dismiss is granted as to the breach of fiduciary duty and UCL counterclaims with leave to amend within 30 days of the date of this order. The motion to dismiss is denied as to the remaining counterclaims. Gill's motion to strike is also granted in part and denied in part. Because amendment of Marsh's request for attorneys' fees under the UCL would be futile, the request is stricken without leave to amend.

**IT IS SO ORDERED**.

Dated: July 18, 2024

_____
RICHARD SEEBORG
Chief United States District Judge